UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAYMOND DARELL CHAPPLE,

Plaintiff,

v.

NANCY A. BERRYHILL,

Defendant.

Case No. 15-cv-06048-KAW

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 16

Plaintiff Raymond Chapple seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I.     BACKGROUND

On October 27, 2011, Plaintiff filed an application for Title XVI benefits, alleging disability beginning on January 1, 1981. (Administrative Record ("AR") 242.) Plaintiff was 45 years of age at the time of the filing of his application. (AR 54.) He did not complete high school, and has never worked. (AR 269, 270.) Rather, Plaintiff has spent most of his adult life in and out of jail, and has thus never held a full-time job. (AR 291, 590, 626.) Plaintiff's disability report lists medical conditions of depression, anxiety, hallucinations, right leg pain, and psychosis. (AR 269.) The Social Security Administration ("SSA") denied Plaintiff's applications initially and on reconsideration. (AR 71, 88.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 108.) The assigned ALJ held a hearing on June 5, 2014. (AR 33.)

The ALJ considered a number of different medical opinions in making her determination. Puran Khalsa, Psy.D, assessed Plaintiff on the referral of Plaintiff's prior attorney on December 2, 2011. (AR 590-596.) Plaintiff reported that with little support, he relied on his girlfriend for help with daily activities like laundry and cooking. (AR 590.) Dr. Khalsa's report states that Plaintiff first developed psychiatric symptoms when he was fifteen years old, reporting excessive paranoia. (AR 591.) Since his early teens, Plaintiff also experienced periods of severe agitation, delusions of persecution, and auditory hallucinations. Plaintiff also experienced traumatic attacks leading to injury, including a beating in 1988, a stabbing in 1991, and a shooting in 2005. (*Id.*) Plaintiff was being treated with antipsychotic medication, but showed little relief from the reported symptoms. (*Id.*) Instead, Plaintiff's delusions of persecution created a pattern of isolation and fear of going outside, and auditory hallucinations disrupted his sleep and eating patterns. (*Id.*) Plaintiff also reported a period of drug use prior to turning 21, but denied any form of drug use after becoming an adult other than occasional alcohol use. (*Id.*) Dr. Khalsa described Plaintiff as looking "scattered" upon arrival, "with eyes darting around the room." (*Id.*) Plaintiff was "extremely agitated and panicking[,] making paranoid statements about people being after him." (*Id.*) Despite his anxiety, Plaintiff's speech was slowed and slurred, and the right side of his face visibly drooped while his facial expression did not change throughout the assessment, showing severely restricted affect. Plaintiff's thought flow was tangential and incorporated wild and unrelated concepts, and his thoughts revolved around suicidality and assaultive ideas. Plaintiff was also excessively paranoid, repeated auditory and visual hallucinations, and showed significantly impaired insight. (*Id.*)

Dr. Khalsa performed a number of tests, and found severe impairments in memory, severe impairments in attention/concentration, marked limitations in language, marked impairments in executive functioning, and severe impairments in visual/spatial abilities. (AR 592-93.) Overall, Dr. Khalsa concluded that Plaintiff might be suffering from schizophrenia, based on his paranoia, delusions of reference and persecution, and auditory hallucinations, but that without a prior diagnosis, it was "unlikely." (AR 595.) Dr. Khalsa also found that Plaintiff showed signs of severe agitation, and that Plaintiff might suffer from PTSD based on prior attacks, which led to

Plaintiff becoming obsessed with themes of violence and avoiding most public places in fear of being attacked. (*Id.*) Dr. Khalsa found that Plaintiff was completely inappropriate for any type of job setting, and stated that his prognosis was "extremely poor." (*Id.*)

On April 27, 2012, Plaintiff had a consultative exam with Patricia Spivey, Psy.D. (AR 626-629.) During the exam, Plaintiff claimed that he had not had an alcohol or drug problem, and denied abuse of any substances currently or historically, both verbally and on intake forms. (AR 626.) Dr. Spivey noted that Plaintiff had admitted on prior psychological evaluations to cocaine and opiate abuse, and was diagnosed with polysubstance dependence and substance-induced psychosis. (*Id.*) The report stated that Plaintiff was able to perform most activities of daily living, and that he could get around on public transportation. (AR 627.) Dr. Spivey observed Plaintiff as being guarded about his legal and drug history, but was not acutely psychotic or visibly anxious, and showed no signs of responding to internal stimuli or losing concentration. (*Id.*) Dr. Spivey also found that Plaintiff's speech, thought process, and content were normal, that he had no loose associations or other signs of thought disturbance, and that he demonstrated a full affect and neutral mood. (*Id.*) Dr. Spivey performed a number of exams. (AR 627-28.) Dr. Spivey determined that Plaintiff's symptoms of psychosis were "possibly real but attributable to drug use." Dr. Spivey also found that Plaintiff was not presenting as a person with schizophrenia and was not on medication. (AR 628.) Dr. Spivey concluded that Plaintiff had no impairments in any of his work-related abilities. (*Id.*)

Following his consultative exam, Plaintiff was in jail. (AR 20.) There, he was treated by Fred Rosenthal, M.D., for depression and anxiety. (AR 655.) In his September 26, 2012 assessment, Dr. Rosenthal found current symptoms of depression, flat affect, and anxiety. Dr. Rosenthal also noted a history of substance abuse, including the use of cocaine in July 2011. (*Id.*) On October 5, 2012, Plaintiff complained of auditory hallucinations, which Dr. Rosenthal found "somewhat questionable" and vague as to content. (AR 657.) Dr. Rosenthal also observed Plaintiff as calm with no evidence of a thought disorder or any severe disturbance in mood. Dr. Rosenthal also opined that Plaintiff's claims of auditory hallucinations might be drug-seeking, in light of his history. Dr. Rosenthal prescribed Zyprexa. (AR 657.) On October 24, 2012, Dr.

Rosenthal reported that Plaintiff stated the medication made him jittery but that the auditory hallucinations had decreased. (AR 658.) On November 2, 2012 and November 14, 2012, Dr. Rosenthal again observed that the complaints of auditory hallucination were questionable, and that there was no evidence of a thought disorder or any severe disturbance in mood. (AR 659, 660.) Plaintiff reported that the medication had reduced the auditory hallucinations. (*Id.*) On November 28, 2012, Plaintiff again reported that the medication was helpful, and was observed as being cooperative, alert, fully oriented, well-groomed, engaging, and having good eye contact. (AR 661.)

On March 11, 2013, Plaintiff had a second consultative exam with Ute Kollath, Ph.D. (AR 666-669.) Dr. Kollath recorded Plaintiff's chief complaints as the gunshot wound to his right leg, paranoid ideation, and auditory hallucination. (*Id.*) Dr. Kollath observed Plaintiff as being friendly and cooperative, making good eye contact and with adequate facial expressions. Plaintiff interacted appropriately with the examiner and office staff, and did not exhibit any bizarre behavior. (*Id.*) Plaintiff stated that he had psychotic symptoms, auditory hallucinations, and paranoid ideation since he was fifteen years old, and that past psychiatric medication was effective but that he was not medication compliant. (*Id.*) He reported a history of substance abuse, but claimed that the last time he used drugs was a couple of years prior. (AR 667.) Plaintiff was independent for basic activities, did not need help with preparing meals, was able to make change at the store, and typically spent his day sitting in the park. (AR 667.) Dr. Kollath conducted several exams, and found that Plaintiff's attention and concentration were impaired. (AR 668.) Dr. Kollath observed, however, that the test results were "an unreliable representation of the claimant's current psychological functioning," due to Plaintiff's "suboptimal efforts." (AR 668.) Thus, the "results cannot be considered as a reasonably valid or reliable estimate of his level of functioning. (*Id.*) Dr. Kollath concluded that Plaintiff was unimpaired in all work-related abilities. (AR 669.)

At the June 5, 2014 hearing, Dr. C. Richard Johnson testified on behalf of Plaintiff, finding diagnoses of depressive disorder, poly-substance dependence, post-traumatic stress disorder, schizo affective disorder, and generalized anxiety disorder. (AR 35.) Dr. Johnson opined that

4

Plaintiff had marked limitations based on Dr. Khalsa's opinion and a medical source statement from July 2011, prior to Plaintiff's application date. (AR 36.) The medical source statement was signed by Dr. Rosenthal and clinician Sarah M. Ulloa, and assessed marked functional limitations. (AR 548.) When the ALJ inquired as to why Dr. Johnson relied on these opinions rather than the opinions by Dr. Spivey and Dr. Kollath, which were later and showed improvement, Dr. Johnson responded that the later opinions were one-time examinations. (AR 40.) The ALJ then pointed out that Dr. Khalsa's opinion was also a one-time examination, which Dr. Johnson did not contradict. (*Id.*)

The ALJ issued an unfavorable decision on June 23, 2014. (AR 10-24.) A request for review of the hearing decision was filed with the Appeals Council on August 21, 2014. (AR 9.) On October 26, 2015, the Appeals Court denied Plaintiff's request for review. (AR 1-6.) On December 23, 2015, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)

On September 26, 2016, Plaintiff filed a motion for summary judgment. (Plf.'s Mot., Dkt. No. 15.) On October 24, 2016, Defendant filed an opposition and cross motion for summary judgment. (Def.'s Opp'n, Dkt. No. 16.) On December 7, 2016, Plaintiff filed a reply. (Plf.'s Reply, Dkt. No. 19.)

## II.    LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r*

*of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick*, 157 F.3d at 721. At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante*, 262 F.3d at 953-954. The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.   THE ALJ'S DECISION

On June 23, 2014, the ALJ issued an unfavorable decision. (AR 13-24.) At step one, the ALJ determined that Plaintiff had not been engaged in substantial gainful activity since October 24, 2011, the application date. (AR 15.)

At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: status-post gunshot wound to the right leg, polysubstance dependence, and

depressive disorder. (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (AR 15-17.) In reaching this determination, the ALJ found that Plaintiff did not satisfy the paragraph B or C criteria. First, the ALJ found that Plaintiff had "mild restriction" in activities of daily living, based on his ability to perform most daily activities and care for his personal hygiene. (AR 16.) Second, the ALJ found that Plaintiff had "moderate difficulties" in social functioning, based on his history of fights since childhood. The ALJ also acknowledged that Plaintiff had "endorsed hallucinations and felt that people stared at him," but explained that "[m]oderating these problems, prison officials have not felt the need to isolate the claimant. He shares his cell with another inmate," developed and maintained relationships during the relevant period, rode public transportation, and spent time in parks. (*Id.*) Such activities put him in contact with other people, which in turn demonstrated an ability for individual and social interactions. Third, the ALJ found that Plaintiff had "moderate difficulties" in concentration, persistence, or pace, based primarily on the evaluation of Dr. Spivey. (*Id.*) The ALJ acknowledged that Dr. Khalsa classified Plaintiff's memory and concentration as "extremely low," but concluded that Dr. Khalsa's observations "do not outweigh the intact functioning reported by Dr. Spivey." (AR 16-17.) Finally, the ALJ found no episodes of decompensation of an extended duration. (AR 17.) Based on these findings, the ALJ concluded that Plaintiff did not satisfy the Paragraph B criteria because the claimant's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation. The ALJ also concluded that Plaintiff did not satisfy the Paragraph C criteria because there were no repeated episodes of decompensation, a disease that would cause decompensation, or an inability to function outside a highly supportive living arrangement. (*Id.*)

At step four, the ALJ determined that Plaintiff had the RFC to perform medium work, restricted to simple, routine tasks with no public contact and only occasional interaction with coworkers and supervisors. (AR 17.) The ALJ found that Plaintiff could maintain attention and concentration for two-hour increments with normal breaks. The ALJ reviewed Plaintiff's past

history of mental impairments and the medical reports, and concluded that the medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects were not entirely credible. (AR 21.) First, the ALJ pointed to the lack of Plaintiff's work history as undermining credibility. (*Id.*) Second, the ALJ found that the medical records further undermined Plaintiff's credibility, based on Plaintiff's failure to attend at least two consultative examinations that were scheduled after his release from prison, and his inconsistency in admitting substance abuse to the consultative examiners. (*Id.*) Further, the ALJ found that Plaintiff's mental health issues appeared to improve on prescription medications, and that even when Plaintiff was noncompliant in continuing treatment, he did not suffer any decompensations and exhibited normal presentation. (*Id.*) Finally, the ALJ found that the RFC was consistent with Plaintiff's daily activities, including going to the park and riding public transportation, which reflected some level of social interaction. (*Id.*)

The ALJ then analyzed the medical opinions, stating that Dr. Spivey's opinion received great weight for her opinion that Plaintiff had mild impairments and a good prognosis, based on Plaintiff's normal performance, Dr. Spivey's review of prior reports, and her note that Plaintiff incorrectly denied his substance abuse history. (AR 21-22.) The ALJ noted that the two State agency consultants gave different opinions, and gave the most weight to the consultant who restricted Plaintiff to simple tasks with limited public interaction as consistent with Dr. Spivey and the rest of the medical record. (AR 22.) The ALJ gave less weight to the consultant who found no severe impairments. Next, the ALJ gave Dr. Kollath little weight for his opinion that Plaintiff was unimpaired, as the statement conflicted with Dr. Kollath's description of inconclusive cognitive performance and the ample records which supported the existence of some limitations. (*Id.*) The ALJ also gave little weight to Dr. Khalsa's opinion that Plaintiff had an extremely poor prognosis and was unable to perform any job, explaining that that determination was reserved to the Commissioner. (*Id.*) The ALJ stated that while she still considered Dr. Khalsa's opinion, it conflicted with the two subsequent examinations. The ALJ gave little weight to the July 2011 medical source statement from Ms. Ulloa and Dr. Rosenthal, stating that the opinion was

8

incomplete and gave no explanation for the restrictions, which predated the relevant period. (*Id.*) Finally, the ALJ gave little weight to Dr. Johnson for his hearing testimony, noting that Dr. Johnson could not explain his decision to focus on some evaluations and not others. (*Id.*)

At step five, the ALJ concluded there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, based on the RFC. (AR 23.)

## IV.    DISCUSSION

In his motion for summary judgment, Plaintiff argues that the ALJ erred in denying his application for social security benefits for five reasons: (1) the ALJ erred in evaluating the medical evidence, (2) the ALJ erred in determining Plaintiff's severe impairments at step two, (3) the ALJ erred in determining that Plaintiff did not meet or equal a listing at step three, (4) the ALJ erred in evaluating Plaintiff's credibility, and (5) the ALJ erred in determining Plaintiff's RFC.

### A.    Weighing of Medical Evidence

Plaintiff argues that the ALJ improperly weighed the medical evidence by: (1) giving little weight to the treating source's opinion, (2) assigning the greatest weight to examining physician Dr. Spivey, and (3) giving little weight to examining physician Dr. Kollath. (Plf.'s Mot. at 4-11.) Conversely, Defendant argues that the ALJ properly addressed the various opinions. (Def.'s Opp'n at 3.)

In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes among the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The three types are classified as: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Id.* A treating physician's opinion is entitled to controlling weight if it is well-supported and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor, and, if contradicted, only for specific and legitimate reasons supported by substantial evidence. *Chater*, 81 F.3d at 830. Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is accepted as true. *Id.* at 834.

### i. July 2011 Medical Source Statement

First, Plaintiff challenges the ALJ decision to give little weight to a July 2011 medical source statement by treating physician Dr. Rosenthal and Ms. Ulloa.[1] (Plf.'s Mot. at 4.) The July 2011 medical source statement is a one-page document, which states that Plaintiff "appears to have symptoms of paranoia," that the conditions were expected to last (but not how long), and that Plaintiff was incarcerated and symptoms were still present. (AR 548.) The 2011 medical source statement assessed "marked" limitations on Plaintiff's daily living activities, ability to maintain social functioning, and abilities to concentrate. (*Id.*) The 2011 medical source also noted three episodes of decompensation within a 12-month period, each of at least two weeks of duration. (*Id.*)

The 2011 medical source statement is contradicted by examining medical expert Dr. Spivey's opinion that Plaintiff had mild impairments and a good prognosis, examining medical expert Dr. Kollath's opinion that Plaintiff had no impairments, and the two agency consultants. The 2011 medical source statement is also contradicted by Dr. Rosenthal's own treatment notes from 2012, which found that there was no evidence of thought disorders or any severe disturbance in mood, that medication reduced hallucinations, and that Plaintiff's claims of auditory hallucinations might be drug-seeking. (AR 655-62.) Since the 2011 medical source statement is contradicted, the ALJ must provide specific and legitimate reasons for rejecting this opinion of the treating physician. *See Chater*, 81 F.3d at 830.

The ALJ gave the 2011 medical source statement "little weight" because the opinion was "incomplete" and provided no explanation for the restrictions, which predate the relevant period by three months. (AR 22.) The Court finds that the failure to provide an explanation for the restrictions is a specific and legitimate reason for rejecting the opinion. The Ninth Circuit has held that an ALJ may reject 'check-off reports that did not contain any explanation of the bases of their

---

[1] Plaintiff argues generally that the ALJ erred in assigning little weight to the opinion of treating physician Dr. Rosenthal, but focuses solely on the ALJ's review of the 2011 medical source statement. (Plf.'s Mot. at 4-5.) Plaintiff does not appear to challenge the ALJ's review of Dr. Rosenthal's later treatment notes, which found no evidence of thought disorders or any severe disturbance in mood, and questioned Plaintiff's claims of hallucinations as "drug-seeking." (*See* AR 655-62.)

conclusions." *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1995); *see also Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (finding that ALJ properly rejected an opinion that "consisted primarily of a standardized, check-the-box form in which she failed to provide supporting reasoning or clinical findings"). Applying this principal, courts in this circuit have found that ALJs could reject medical source statements that contained only check-the-box opinions. In *Huntsman v. Colvin*, the district court concluded that the ALJ could reject a treating physician's medical source statement solely because the physician "did not explain any of the objective bases for his opinions that plaintiff had disabling functional limitations." Case No. EDCV 13-1300 JC, 2014 WL 808020, at *4 (C.D. Cal. Feb. 28, 2014). The district court observed that the physician "did not reference any medically acceptable clinical or laboratory diagnostic findings--either his own or from another doctor--to support his opinions." *Id.* Similarly, in *Jimenez v. Colvin*, the district court rejected a medical source statement where the physician diagnosed moderate shoulder pain but "failed to explain how the Claimant's impairments impose the severe exertional and postural limitations he assessed when the identified diagnosis involves only the right upper extremity." Case No. CV 12-1676-JEM, 2013 WL 3200523, at *4 (C.D. Cal. June 24, 2013).

Here, the 2011 medical source statement states that Plaintiff "appears to have symptoms of paranoia." (AR 548.) In response to the question of whether the impairments remain severe in the absence of substance use, the 2011 medical source statement notes that Plaintiff was incarcerated and that the symptoms were still present, although it does not indicate that the symptoms were severe.[2] (*Id.*) The 2011 medical source statement does not, however, reference any clinical or laboratory diagnostic findings to support the opinion, instead referring only to Plaintiff "*appear[ing]*" to have symptoms of paranoia. (*Id.* (emphasis added).) The 2011 medical source statement also fails to explain why the symptoms of paranoia would lead to marked restrictions of daily living, difficulties in maintaining social functioning, or deficiencies in concentration. *Contrast with Smolen*, 80 F.3d at 1288 (finding that the ALJ should not have rejected responses to

---

[2] Plaintiff suggests that an "inference" can be drawn from this that Plaintiff's symptoms are not related to substance abuse. Notably, as the ALJ noted, Dr. Rosenthal later questioned Plaintiff's allegations of hallucinations as "drug seeking," thus contradicting this inference. (AR 20, 657.)

1    questions that called for only yes-or-no answers where the physician's responses were

2    accompanied by comments explaining the reasons for each of his responses).  Given the lack of

3    explanation connecting what appeared to be symptoms of paranoia to the marked limitations, the

4    ALJ did not err in rejecting the 2011 medical source statement.

5         Plaintiff next argues that there is ample evidence showing multiple symptoms, pointing to

6    prior treatment notes by Dr. Rosenthal and Ms. Ulloa showing hallucinations, rapid stutters, and

7    depressed and anxious mood.  (Plf.'s Mot. at 5.)  None of these symptoms or treatment notes,

8    however, were referred to by the 2011 medical source statement in concluding that Plaintiff had

9    marked limitations.  Thus, the ALJ's finding that the 2011 medical source statement lacked an

10   explanation for the restrictions is valid.

11        Alternatively, Plaintiff contends that the ALJ had a duty to re-contact the treating

12   physician to ascertain what the treating physician's opinion was based on.  (Plf.'s Mot. at 6.)  "The

13   ALJ in a social security case has an independent duty to fully and fairly develop the record and to

14   assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150

15   (9th Cir. 2001) (internal quotation omitted).  An ALJ may, however, reject a conclusory and brief

16   opinion that is unsupported by clinical findings when confronted with conflicting medical

17   opinions. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 ("an ALJ may discredit

18   treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole,

19   or by objective medical findings").  Such is the case here, where the 2011 medical source

20   statement's diagnosis of marked limitations is contradicted not only by examining physicians, but

21   by the treating physician's later examinations, which found no evidence of thought disorder or

22   severe disturbance in mood. *Compare with Davis v. Colvin*, No. C13-1209 HRL, 2014 WL

23   3962663, at *3 (N.D. Cal. Aug. 13, 2014) (explaining that an ALJ did not have to "conduct an

24   inquiry whenever presented with an unsubstantiated opinion," particularly where "the record,

25   containing opinions from multiple medical doctors, was sufficiently developed to allow for proper

26   evaluation").

27        Finally, Plaintiff contends that the ALJ should have considered the opinion despite

28   predating the relevant period by three months.  (Plf.'s Mot. at 6-7.)  Plaintiff argues that the

records were relevant because they established that the onset of his mental disorders "occurred very early in life and persisted throughout." (*Id.* at 7.) As discussed above, the ALJ validly rejected the 2011 medical source statement based on its failure to explain the restrictions. Moreover, the ALJ did review Plaintiff's long history of mental impairments, describing Plaintiff's impairments from the age of 16 and reviewing the various reports. (AR 19.) The 2011 medical source statement adds little to this discussion, particularly where the document includes no reference to any past clinical results or patient history.

Thus, the Court finds that the ALJ did not err in assigning little weight to the 2011 medical source statement.

### ii. Dr. Patricia Spivey

Second, Plaintiff argues that the ALJ erred in assigning the greatest weight to the opinion of examining physician, Dr. Spivey. (Plf.'s Mot. at 8.) The ALJ assigned Dr. Spivey great weight for her examining opinion that Plaintiff had a mild impairment in maintaining emotional stability and a good prognosis, based on Plaintiff's normal performance during the evaluation. (AR 21-22.) The ALJ also noted that Dr. Spivey took time to review prior reports and noted that Plaintiff had incorrectly denied his substance abuse history. (AR 22.)

In challenging the weight given to Dr. Spivey, Plaintiff contends that Dr. Spivey misinterpreted the results of the administered exams because his test results placed him in low percentiles. (Plf.'s Mot. at 8.) Specifically, Plaintiff points to his examination results that gave him an IQ score of 72 (3rd percentile), auditory memory in the 5th percentile, and visual memory in the 12th percentile. (*Id.* at 9; AR 627.) Plaintiff also points to his results in the Trails A/B, which Plaintiff asserts indicates a mild and severe impairment respectively.[3] (Plf.'s Mot. at 9.) Plaintiff argues that "[t]hese test scores do not show a person with no functional limitations, but

---

[3] Plaintiff also argues that the Trails results were disqualifying because of their proximity to the tests conducted by Dr. Khalsa, relying on the *Handbook of Psychological Assessment*'s (which the Court cannot independently verify because Plaintiff did not provide the *Handbook* to the Court) statement that "retesting in a 6 to 12 month period shows the lowest overall reliability for schizophrenics of only .36 on Trial [sic] A." (Plf.'s Mot. at 9.) This, however, assumes Plaintiff has schizophrenia, which is not clear from the record, as only Dr. Khalsa found that Plaintiff might be suffering from schizophrenia, before noting that "it is unlikely." (AR 595.)

rather . . . they show a person with severe functional abilities," and thus Dr. Spivey's conclusion that Plaintiff was mildly impaired was a misinterpretation of the results, and thus does not support the ALJ's assignment of great weight. (*Id.* at 8-9.)  Plaintiff also challenges the ALJ's finding that Dr. Spivey reviewed the record, arguing that Dr. Spivey only examined one note from Santa Rita jail, an excerpt of a psychological evaluation, and a January 2012 evaluation by Dr. Rana. (*Id.* at 9.)

The Court finds that the ALJ gave specific and legitimate reasons, and therefore did not err in assigning Dr. Spivey great weight.  Plaintiff primarily challenges Dr. Spivey's opinion based on her impairment findings in light of the administered exams; Dr. Spivey's evaluation, however, was not based solely on the administered exams.  Dr. Spivey is clear that her diagnosis is based not only on the test score, but the clinical interview and mental status exam. (AR 628.)  In the clinical interview, Dr. Spivey observed that Plaintiff was "not acutely psychotic and did not appear anxious," and "exhibited no signs of responding to internal stimuli or losing concentration." (AR 627.)  Plaintiff was also able to perform most activities of daily living and get around on public transportation. (*Id.*)  From the mental status exam, Dr. Spivey found that Plaintiff's speech, thought process, and content were normal.  There was also no evidence of poor reality testing, no response to internal stimuli, and no loose associations or other signs of thought disturbance.  Plaintiff also presented with a full affect and neutral mood. (*Id.*)  The ALJ could reasonably find that this normal performance supported Dr. Spivey's opinion, and assign great weight accordingly.  As to the examination of the record, even though Dr. Spivey's review of prior reports was limited, this does not preclude the ALJ from assigning Dr. Spivey great weight, particularly when her assessment was based on her own independent examination of Plaintiff. *See Castaneda v. Astrue*, 344 Fed. Appx. 396, 398 (9th Cir. 2009) ("Even assuming [the examining physician] did not review [the plaintiff's] MRI, the ALJ did not err [because the examining physician's] assessment rested on his own independent examination of [the plaintiff] and was consistent with the record as a whole").

### iii.   Dr. Puran Khalsa

Third, Plaintiff challenges the ALJ's decision to give little weight to Dr. Khalsa's opinion.

14

1    (Plf.'s Mot. at 10.)  The ALJ gave little weight to Dr. Khalsa's opinion that the claimant had an

2    extremely poor prognosis and was unable to perform any job, explaining that such a determination

3    was reserved to the commissioner under 20 C.F.R. § 416.927(e).  (AR 22.)  The ALJ stated that

4    she still considered the opinion, but noted that it conflicted with the more recent examinations by

5    Dr. Spivey and Dr. Kollath.  (*Id.*)

6         Plaintiff argues that the ALJ incorrectly cited 20 C.F.R. § 416.927(e), which pertains to

7    non-examining sources, rather than 20 C.F.R. § 416.927(d).  (Plf.'s Mot. at 10.)  Plaintiff also

8    argues that even if Dr. Khalsa's report conflicts with the two subsequent evaluations, there was

9    substantial evidence elsewhere in the record which support the schizoaffective and psychosis

10   diagnoses, although Plaintiff fails to provide any citations to the record.  (*Id.* at 11.)  Finally,

11   Plaintiff challenges the two subsequent evaluations, in particular arguing that Dr. Kollath admitted

12   in his report that the test results were an "unreliable representation of [Plaintiff's] current

13   psychological functioning."  (*Id.*)  Defendants respond that the ALJ could reject Dr. Khalsa's

14   opinion based on the two subsequent evaluations.  (Def.'s Opp'n at 8-9.)[4]

15        The Court finds that the ALJ adequately explained her decision to give little weight to Dr.

16   Khalsa's opinion about Plaintiff's prognosis and ability to perform any job.  With respect to

17   Plaintiff's assertion that the ALJ cited to the wrong regulation, while Plaintiff appears to be correct

18   that the wrong section was identified, Plaintiff fails to explain why this mistake was prejudicial.

19   Indeed, 20 C.F.R. § 416.927(d) describes issues that are reserved to the Commissioner, including

20   whether a claimant is disabled and the residual functional capacity.  Citation to the wrong section

21   is not harmful in this case because the ALJ correctly explained the principal of law being applied,

22   which Plaintiff does not challenge.  As such, the Court rejects this argument.

23        Likewise, the Court rejects Plaintiff's argument that there is "substantial evidence" of

24   schizoaffective and psychosis diagnoses, as Plaintiff provides no citations to the record in support

25   of this conclusory statement.  *See Pulido v. Comm'r of Soc. Sec.*, No. 2:14-CV-2611-CMK, 2016

26

27   _____

     [4] Defendant also argues that the ALJ rejected Dr. Khalsa's opinion based on the GAF score, but

28   the ALJ did not refer to the GAF score in explaining why she gave little weight to Dr. Khalsa's
     opinion.  (Def.'s Opp'n at 8-9; AR 22.)

WL 1170856, at *9 (E.D. Cal. Mar. 25, 2016) ("The court rejects plaintiff's conclusory statement. Plaintiff provides no citation to the record supporting mental limitations not included in the ALJ's residual functional capacity assessment"). The Court also rejects Plaintiff's argument that the two subsequent evaluations were problematic. As discussed above, Dr. Spivey's evaluation was adequate. With respect to Dr. Kollath, while Dr. Kollath did find that his test results were an "unreliable representation" of Plaintiff's abilities, this was due to Plaintiff's "suboptimal efforts." (AR 668.) Moreover, Dr. Kollath's opinion was not limited to the mental status exam, but the clinical interview as well. (AR 669.) Dr. Kollath described Plaintiff as being friendly and cooperative, and with good eye contact and adequate facial expression. (AR 666.) Plaintiff was also observed interacting appropriately with Dr. Kollath and the staff, and displaying no bizarre behavior. (*Id.*) Plaintiff also reported being independent for basic activities. (AR 667.) Taken together, Plaintiff's focus on Dr. Kollath's statement that the test results were an "unreliable representation" alone does not invalidate Dr. Kollath's opinion, such that the ALJ could not find that Dr. Khalsa's opinion was contradicted by two subsequent examinations. The Court finds that the ALJ gave specific and legitimate reasons in giving little weight to Dr. Khalsa's opinion.

### B. Step Two Severe Impairments

Next, Plaintiff argues that the ALJ erred by not finding that Plaintiff suffered schizoaffective disorder, PTSD, and anxiety. (Plf.'s Mot. at 11.) Plaintiff also argues that the ALJ erred by finding Plaintiff's polysubstance abuse to be severe. (*Id.*) The second step of the sequential evaluation process is the determination of whether the claimant's impairment or combination of impairments is "severe." *Reddick*, 157 F.3d at 721. Under the de minimis step two standard, "an impairment or combination of impairments may be found not severe *only if* evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005). Step two is a "de minimis screening device [used] to dispose of groundless claims." *Id.* at 687. An ALJ may only find that a claimant lacks a medically severe impairment or combination of impairments when the conclusion is based on "clearly established medical evidence." *Id.*

In support of his argument, Plaintiff points to a March 9, 2008 medical record which lists a

secondary diagnosis of schizophrenia/psychosis, as well as Dr. Khalsa's examination. (Plf.'s Mot. at 12.) With respect to Plaintiff's contention that the ALJ erred by finding Plaintiff's polysubstance abuse to be severe, Plaintiff offers no legal or factual argument in support. Defendant responds that only Dr. Khalsa diagnosed schizophrenia, PTSD, and anxiety, and that Dr. Khalsa's opinion was properly discounted by the ALJ. (Def.'s Opp'n at 11-12.)

The Court finds that the ALJ did not err in not finding schizophrenia, PTSD, and anxiety. Plaintiff primarily relies on Dr. Khalsa's opinion, but as discussed above, the ALJ properly explained why she discounted Dr. Khalsa's opinion.[5] While Plaintiff points to other medical records which state that Plaintiff had schizophrenia and that he was taking medication for anxiety, these medical records do not demonstrate that Plaintiff's schizophrenia or anxiety had any effect on his ability to work.[6] (AR 470, 471, 474, 479, 480, 485, 486, 489, 495.) "Having a diagnosis and taking medication for over one year does not automatically render an impairment severe for the purposes of step two." *Saballos v. Colvin*, Case No. 13-cv-5943-KAW, 2015 WL 1481563, at *7 (N.D. Cal. Mar. 31, 2015). Similarly, these records provide no information on whether the medication was effective, such that with medication, the effects were mild or had more than a minimal effect on Plaintiff's ability to work. *See id.*; *see also* AR 491 (finding that Plaintiff's agitation and paranoia "improved significantly" after being placed on Seroquel).

Further, even if the ALJ had erred in not finding schizophrenia, PTSD, and anxiety, Plaintiff fails to identify how any error was harmful given that the ALJ considered these symptoms when continuing the sequential analysis. *See Lewis v. Astrue*, 498 F. 3d 909, 911 (9th Cir. 2007) (harmless error when decision reflects that the ALJ considered the plaintiff's limitations at step four). At step three, the ALJ considered Plaintiff's allegations of hallucinations and

---

[5] It is also not clear Dr. Khalsa's opinion supports a diagnosis of schizophrenia, as Dr. Khalsa stated that such a diagnosis was "unlikely." (AR 595.)

[6] The Court notes that these medical records were from 2008, well before the relevant period. *See Tate v. Colvin*, Case No. ED CV 14-1248-DFM, 2015 WL 5234015, at *4 (C.D. Cal. Sept. 8, 2015) ("records that predate the relevant period by two to four years are of only limited relevance"); *Fair v. Brown*, 885 F.2d 597, 600 (9th Cir. 1989) (finding that a medical report that predated the period at issue was relevant only to the claimant's burden of proving that his condition had worsened since).

1    paranoia in determining that Plaintiff had moderate difficulties in social functioning.  (AR 16.)

2    Those hallucinations and paranoia were the basis of Dr. Khalsa's finding that Plaintiff could be

3    suffering from schizoaffective disorder.  (AR 595.)  The ALJ also considered these symptoms in

4    determining Plaintiff's RFC, recounting Plaintiff's hallucinations and paranoia, before noting that

5    his condition improved on medications and that several medical doctors, including treating

6    physician Dr. Rosenthal, questioned the allegations of hallucinations.  (AR 19-20.)

7         As to Plaintiff's argument that the ALJ erred by finding Plaintiff's polysubstance abuse to

8    be severe, again, Plaintiff provides no argument in support.  Absent any explanation, the Court

9    need not entertain this argument.  *See Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1210 n.4

10   (9th Cir. 2013) (declining to consider assertions unsupported by argument).  In any case, the

11   record contains significant evidence that Plaintiff had abused drugs, and that these actions may

12   have caused Plaintiff's symptoms.  (*See* AR 628 (finding that Plaintiff's reported symptoms of

13   psychosis were "possibly real but attributable to drug use"), 657 (finding that Plaintiff's claims of

14   auditory hallucinations "may be drug seeking in view of his history").)

15        Accordingly, the Court concludes that the ALJ's decision not to include schizophrenia,

16   PTSD, and anxiety as severe impairments was supported by substantial evidence.

17   **C.    Step Three Listing**

18        **i.    Paragraph A Criteria**

19        Plaintiff argues that the ALJ erred because she failed to consider whether Plaintiff met the

20   A criteria for a 12.03, 12.04, and/or 12.06 listing.  (Plf.'s Mot. at 13.)  While the ALJ did not

21   discuss whether Plaintiff met the A criteria, this was not error.  In order to meet a listing in

22   Appendix 1 for a mental disorder, a claimant must satisfy criteria in paragraph A of the listings,

23   which medically substantiate the presence of a mental disorder, *and* the criteria in paragraphs B or

24   C, which describe the functional limitations associated with the disorder that are incompatible

25   with the ability to work. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00.  Thus, even if Plaintiff met

26   the A criteria, he would still need to demonstrate that he met the criteria in paragraphs B or C.

27   The ALJ did, however, consider whether Plaintiff met the B or C criteria for a 12.03, 12.04, 12.06,

28   and 12.09 listing.  (AR 16 ("Contrary to the testimony of medical expert . . . the severity of the

claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings **12.03**, **12.04**, **12.06**, and 12.09) (emphasis added).)  As discussed below, the ALJ's decision that Plaintiff did not meet the B or C criteria was supported by substantial evidence.  Thus, the ALJ's failure to explicitly consider whether Plaintiff met the A criteria for 12.03, 12.04, and/or 12.06 listing was harmless.

### ii.    Paragraph B Criteria

In order to satisfy the criteria in paragraph B, Plaintiff's paragraph A impairment must result in at least two of the following: (1) marked restriction in the activities of daily living; (2) marked difficulties in maintaining social functioning; (3) deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or (4) repeated episodes of decompensation, each of extended duration (*i.e.*, three episodes within one year, or an average of once every four months, each lasting for at least two weeks).  20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04(B).

First, Plaintiff argues that the ALJ erred in determining that Plaintiff had only a mild impairment in activities of daily living.  Plaintiff contends that the ALJ should not have relied on Dr. Spivey's and Dr. Kollath's findings, and that Plaintiff had informed Dr. Khalsa that his girlfriend helped with chores such as washing laundry and cooking meals.  (Plf.'s Mot. at 16.)  The Court finds that the ALJ's finding was supported by substantial evidence.  Dr. Spivey found that Plaintiff was able to perform most activities of daily living.  (AR 627.)  Dr. Kollath's report also indicated that Plaintiff was independent for basic activities of daily living, and that he did not need help with preparing meals.  (AR 667.)  The fact that Plaintiff informed Dr. Khalsa that his girlfriend helped with chores such as washing laundry and cooking meals does not alone demonstrate that Plaintiff had a marked impairment in activities of daily living, particularly when later examinations found that Plaintiff did not require assistance in activities of daily living, including with meals.

Second, Plaintiff contends that the ALJ erred in finding that Plaintiff was only moderately impaired in social functioning.  (Plf.'s Mot. at 16.)  Plaintiff relies on the July 2011 medical source statement, Dr. Khalsa's report, and Dr. Johnson's testimony.  The Court finds that the ALJ did not

err in finding that Plaintiff was only moderately impaired. The ALJ explained that Plaintiff had a history of fights and violence, which suggested social deficits, as well as endorsing hallucinations and felt that people stared at him. (AR 16.) The ALJ found, however, that moderating these problems, Plaintiff was able to share his cell with another inmate, was able to develop and maintain relationships during the relevant period, and engaged in activities that put him in contact with other people, such as riding the bus and spending time in the park. (AR 16.) Thus, contrary to Plaintiff's reports of being paranoid of other people and avoiding public places in fear of being attacked, Plaintiff demonstrated that he was able to interact with others and did go to public places, where he would be put in contact with other people. Further, as discussed above, the ALJ did not err in finding that the July 2011 medical source statement and Dr. Khalsa's report were entitled to little or no weight. As for Dr. Johnson's testimony, Dr. Johnson explained that his opinion was reliant on the July 2011 medical source statement and Dr. Khalsa's report. (AR 36.) For that reason, the ALJ gave his hearing testimony little weight. (AR 22.) The Court finds that the ALJ's assessment is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff was only moderately impaired in concentration and persistence in pace. (Plf.'s Mot. at 18.) Again, Plaintiff primarily relies on Dr. Khalsa's report, to which the ALJ did not err in giving reduced weight. Plaintiff also relies on the results from Dr. Spivey's testing, which gave Plaintiff low marks in IQ, verbal comprehension, perceptual reasoning, working memory, and processing speed. (*Id.*) The ALJ acknowledged these test results, but ultimately relied on Dr. Spivey's finding that Plaintiff's functioning was intact, as well as Plaintiff's ability to handle money. (AR 16-17.) Dr. Spivey's opinion was based not only on the test results, but on the full evaluation, which included an interview with Plaintiff. The Court concludes that the ALJ's finding was supported by substantial evidence.[7]

_____

[7] Moreover, even if the ALJ had erred in finding moderate restrictions, as opposed to marked restrictions, in Plaintiff's concentration, persistence, and pace, the error would be harmless. Plaintiff must demonstrate marked impairment in at least two of the four paragraph B criteria; as discussed, the ALJ did not err in finding that Plaintiff lacked marked restrictions in activities of daily living and social functioning. As for periods of decompensation, Plaintiff does not argue that this requirement is satisfied under paragraph B. (*See* Plf.'s Mot. at 15-19.)

Therefore, the Court concludes that the ALJ did not err in finding that Plaintiff did not satisfy the paragraph B criteria.

### iii.    Paragraph C Criteria

Next, Plaintiff argues that the ALJ erred by finding that Plaintiff did not meet the paragraph C criteria when she concluded that Plaintiff had experienced no episodes of decompensation, which have been of extended duration.  (Plf.'s Mot. at 19.)  To satisfy the criteria of paragraph C, Plaintiff's paragraph A impairment, of at least 2 years' duration, must cause more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, as well as one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimum increase in mental demands or change in environment would cause decompensation; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement.  20 C.F.R. Pt. 404, Subp. P, App'x 1 § 12.04(C).

Here, Plaintiff first relies on the July 2011 medical source statement, which indicated that Plaintiff had three episodes of decompensation within a 12 month period, each of at least two weeks duration.  (Plf.'s Mot. at 19; AR 548.)  Again, the ALJ could give the July 2011 medical source statement little weight, given its lack of explanation.  Moreover, the July 2011 medical source statement preceded the relevant period; there is no evidence that Plaintiff suffered repeated episodes of decompensation, each of extended duration, during the *relevant* period.  *Compare with Fry v. Comm'r of Soc. Sec.*, No. 2:15-cv-2023-KJN, 2017 WL 999459, at *5 (E.D. Cal. Mar. 15, 2017) (no evidence that the plaintiff had experienced any episodes of decompensation during the relevant period); *Phillips v. Colvin*, Civil Action No. 2:14CV67, 2015 WL 1268292, at *27 (N.D.W.V. Mar. 19, 2015) ("although Dr. Salman opined that Plaintiff had experienced three (3) episodes of decompensation [citation], the record is silent as to any episodes of decompensation during the relevant period"); *Havens v. Colvin*, Civil No. 3:13-cv-600, 2014 WL 4659957, at *9 ("Havens' medical records do not document a single episode of decompensation within the relevant period, and thus the requirements of subparagraph 1 are not met").  While Plaintiff also

points to Dr. Johnson's testimony that Plaintiff had at least four hospitalizations, Dr. Johnson did not explain when these hospitalizations occurred, did not cite to any medical records, and admitted that none of the episodes were of extended period. (Plf.'s Mot. at 19; AR 44.) The Court therefore finds that the ALJ did not err in finding that Plaintiff did not meet the paragraph C criteria based on Plaintiff suffering repeated episodes of decompensation of extended duration.

### D. Credibility Determination

Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility by failing to consider the entire case record and provide clear and convincing reasons. (Plf.'s Mot. at 20.) The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments was not entirely credible, focusing on Plaintiff's limited work history, failure to attend at least two consultative examinations, inconsistency in admitting substance abuse, and treatment history. (AR 21.)

In evaluating a claimant's testimony regarding subjective pain or other symptoms, and ALJ must engage in a two-step inquiry. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). An ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations and citations omitted). At this step, a claimant need not show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation and citations omitted). Next, if a claimant meets this first prong and there is no evidence of malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting a claimant's testimony about the severity of her symptoms. *Id.* The Ninth Circuit has found that:

> [t]he ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. [Citations.] If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

22

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Plaintiff argues that the failure to submit to psychiatric treatment is not a clear and convincing reason to discount credibility. (Plf.'s Mot. at 20.) Plaintiff relies on cases in which the Ninth Circuit has found that the failure of a claimant to seek treatment was not a reason to reject a medical opinion. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) ("Nor is Regennitter's failure, because of his poverty, to seek treatment by any mental professional a valid reason for the ALJ to reject Dr. Manfield's opinion"); *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate"). These cases, however, "say[] nothing about whether a claimant's failure to follow a recommended course of treatment . . . is a factor that can adversely impact the claimant's credibility concerning the severity of his psychiatric symptoms." *Dreesman v. Colvin*, Case No. 13-cv-2009-LHK, 2014 WL 4626006, at *9 (N.D. Cal. Sept. 15, 2014). Moreover, Plaintiff presents no evidence that his failure to seek treatment was attributable to his mental impairment rather than personal preference. *Molina*, 674 F.3d at 1113-14 ("a claimant's failure to assert a good reason for not seeking treatment . . . can cast doubt on the sincerity of the claimant's . . . testimony"). Thus, the ALJ did not err in basing her adverse credibility finding on Plaintiff's failure to seek treatment.

Similarly, the ALJ did not err in basing her adverse credibility finding on Plaintiff's failure to attend consultative exams. Plaintiff does not explain why he failed to attend at least two consultative examinations, and courts in this district have found that an "unexcused failure to attend a consultative evaluation would justify an ALJ's decision to discredit that claimant's testimony." *Zamora v. Astrue*, No. C 09-4852 JSW, 2010 WL 3768001, at *7 (N.D. Cal. Sept. 22, 2010), *affirmed by Zamora v. Comm'r of Soc. Sec. Admin.*, 471 Fed. Appx. 579 (9th Cir. 2012).

Plaintiff also challenges the ALJ's finding that Plaintiff was inconsistent in admitting his substance abuse. (Plf.'s Mot. at 21.) Plaintiff argues that he was open about his substance abuse, pointing to his records from one medical provider. Plaintiff admits, however, that there are "conflicting reports" from Dr. Kollath and McMillian, but argues that Dr. Kollath's results are

1    unreliable.  (*Id.*)  Plaintiff also theorizes that memory loss "[wa]s a particular symptom related to

2    his illness," but provides no evidence that he was suffering from memory loss at the time of Dr.

3    Kollath's examination.  The Court finds the ALJ did not err in basing her adverse credibility

4    finding on Plaintiff's inconsistency in admitting substance abuse.  While Plaintiff has been

5    forthcoming at some times about his drug use, he has also denied his substance abuse at other

6    times.  For example, on April 27, 2012, Plaintiff told Dr. Spivey that he had not had an alcohol or

7    drug problem, and denied the abuse of any substances currently or historically, both verbally and

8    on his intake forms.  (AR 626.)  On March 11, 2013, Plaintiff admitted to Dr. Kollath that he had a

9    history of substance abuse, but claimed that the last time he used drugs was "a couple years ago."

10   (AR 667.)  That very same day, however, Plaintiff informed Dr. McMillan that he had snorted

11   cocaine three days prior.  (AR 673.)  While Plaintiff argues that Dr. Kollath described the test

12   results as "unreliable," this description concerned the test results, and does not invalidate Plaintiff's

13   own statements made to Dr. Kollath.  Plaintiff's selectiveness in admitting to substance abuse

14   justifies the ALJ's adverse credibility finding.

15        Next, Plaintiff challenges the ALJ's finding that Plaintiff's limited work history undermines

16   credibility, arguing that this assessment is "tenuous at best and not supported by regulations or

17   case law."  (Plf.'s Mot. at 21.)  Plaintiff provides no authority for this proposition.  The Ninth

18   Circuit has, in fact, found that an ALJ may consider a claimant's work record as one of the factors

19   in weighing claimant credibility.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) ("The

20   ALJ may consider at least the following factors when weighing the claimant's credibility: . . . [her]

21   work record").  The ALJ therefore could validly consider Plaintiff's work record as one factor in

22   weighing Plaintiff's credibility.

23        Plaintiff also challenges the ALJ's discussion of Plaintiff's daily activities, which included

24   going to the park and riding public transportation.  In support, Plaintiff cites to authority that

25   claimants need not be utterly incapacitated to be eligible for benefits.  (Plf.'s Reply at 12.)  Such

26   authority does not mean that the ALJ erred in considering Plaintiff's daily activities in determining

27   Plaintiff's *credibility*; daily activities are one of the factors the Ninth Circuit has found may be

28   considered in determining credibility.  *Thomas*, 278 F.3d at 959 (listing factors that may be

considered in weighing a claimant's credibility, including daily activities").  Given that Plaintiff claimed paranoia to the point that he was afraid of leaving his home, the ALJ could find that his daily activities contradicted these claims, as riding public transportation and going to the park would put him in contact with the public.  (AR 16, 21.)  Such discrepancies would then go to Plaintiff's credibility.  *Molina*, 674 F.3d at 1112 ("the ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct, [including] whether the claimant engages in daily activities inconsistent with the alleged symptoms") (internal quotation omitted).

Finally, Plaintiff challenges the ALJ's findings regarding Plaintiff's improvement on medication, arguing that "just because a person suffers from depression or anxiety and makes some improvement does not mean that the person's impairment no longer seriously affect her ability to function in a workplace."  (Plf.'s Mot. at 21 (internal quotation omitted).)  Plaintiff does not, however, explain why this would affect Plaintiff's credibility.  It is not clear how much the ALJ considered Plaintiff's improvement on medication in her credibility determination; regardless, the ALJ articulated multiple reasons why she did not find Plaintiff credible, including his failure to seek treatment, his limited work history, his failure to attend at least two consultative examinations, his inconsistency in admitting substance abuse, and the inconsistency between his daily activities and claims of symptoms.  Therefore, the Court concludes that the ALJ provided multiple specific, clear, and convincing reasons in support of her credibility determination.

## E.    Residual Functional Capacity Determination

Finally, Plaintiff argues that the ALJ's RFC was not based on substantial evidence.  (Plf.'s Mot. at 22.)  A social security claimant's RFC is what the claimant is capable of doing despite his or her mental and physical limitations.  20 C.F.R. §§ 404.1545(a)(1), 415.945(a)(1); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p, 1996 SSR LEXIS 5.  The ALJ must consider all relevant evidence in formulating an RFC, and "an RFC that fails to take into account a claimant's limitations is defective."  *Valentine*, 574 F.3d at 690.  The ALJ's findings may be set aside if not supported by substantial evidence.  *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002);

*Smolen*, 80 F.3d at 1040-41 (RFC excluding subjective limitations was not supported by substantial evidence where the ALJ did not provide clear and convincing reasons for discrediting claimant's testimony).

Here, the ALJ found that Plaintiff had the residual functional capacity to perform medium work, and that he could occasionally stoop, kneel, and crouch. (AR 17.) The ALJ restricted Plaintiff to simple, routine tasks with no public contact and only occasional interaction with coworkers and supervisors. The ALJ also found that Plaintiff could maintain attention and concentration for two-hour increments with normal breaks. (*Id.*) Plaintiff asserts that the ALJ erred in this RFC determination because there was evidence of greater limitations; in support, Plaintiff relies solely on the conclusions in the July 2011 medical source statement, Dr. Khalsa's report, and Dr. Johnson's testimony. (Plf.'s Mot. at 24.) As discussed above, the ALJ provided valid explanations for why she gave these reports lower or no weight. Plaintiff does not otherwise challenge the RFC, and therefore the Court concludes that ALJ's findings were supported by substantial evidence.[8]

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, and Defendant's cross-motion for summary judgment is GRANTED. The Clerk shall close the case.

IT IS SO ORDERED.

Dated: August 29, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

[8] In the reply, Plaintiff for the first time challenges the vocational expert analysis, arguing that the ALJ did not include limitations in her hypotheticals to include the ALJ's findings that Plaintiff has mild restrictions in activities of daily living and moderate restrictions in social functioning and concentration, persistence, and pace. (Plf.'s Reply at 13.) As this issue was not raised in Plaintiff's motion, it is waived. *See Whiteway v. FedEx Kinkos Office & Print Servs., Inc.*, No. C 05-2320 SBA, 2007 WL 4531783, at *3 (N.D. Cal. Dec. 17, 2007) ("Courts decline to consider arguments raised for the first time in reply" (internal citations omitted). In any case, the RFC reflects these restrictions; the ALJ specifically explained that "[t]he mental impairments limit the complexity of tasks [Plaintiff] can perform and his interactions with other people." (AR 22.) Thus, by asking the vocational expert questions that were based on the RFC, the ALJ included these limitations.